Hartnett *v.* Wharton Hardware & Paint Co., Appellant.

Argued June 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*George D. Sheehan,* with him *John Paul Erwin,* for appellant.

*Bernard P. Carey,* for appellee.

OPINION BY ERVIN, September 11, 1958:

This is an action in trespass arising from a right angle collision between two automobiles. It was tried before a judge and jury. The court below entered judgment for the plaintiff after a verdict in his favor. The defendant appealed after a dismissal of its motions for new trial and judgment n.o.v. by the court below.

No evidence was offered by the defendant. There was no contradiction in the evidence as offered by the plaintiff. The accident occurred on August 17, 1955 at 1:30 p.m., a clear and sunny day, at the intersection of Third Street and Federal Street in the City of Philadelphia. Third Street is a one-way street for northbound traffic and Federal Street is a one-way street for westbound traffic. There were no traffic controls at the intersection. Each street is 25 feet wide between curbs and the sidewalk of Federal Street on the south side is 10 or 12 feet wide. When plaintiff, traveling north on Third Street, reached the house line of Federal Street, 10 or 12 feet from the southerly curbline, he was traveling 5 or 6 miles an hour and at that point saw defendant's automobile, traveling west at a speed of 25 miles per hour, 250 feet east of the intersection. Plaintiff looked again when he reached the southerly curbline of Federal Street, at which point he was traveling 2 or 3 miles an hour, and saw defendant's automobile 150 feet to his right, maintaining its speed

of 25 miles an hour. Plaintiff then drove into and across the intersection without again looking to his right and did not see defendant's automobile until after the collision, which occurred when the front of his car had passed the northerly curbline of Federal Street, it having been struck on the right rear fender by the defendant's car. Plaintiff's testimony was as follows: "Q. You saw him at the house line and at the curb line? A. Yes. Q. When did you next see him? A. When he hit me. In fact I didn't see him until I was past the intersection. Q. You didn't look from the time you left the South curb line until after the accident occurred? A. Yes, I guess that is right."

The majority of this Court are of the opinion that the plaintiff was contributorily negligent as a matter of law. His failure to look to the right, knowing that an automobile was approaching from that side at such a speed and within such a distance as to make his safe passage questionable, forces us to this conclusion. Even though he accelerated his speed while crossing the intersection from 3 miles per hour to approximately 10 miles per hour, which he had attained at the moment of collision, his safe passage continued to be questionable. Plaintiff knew that he had to traverse a distance of 25 feet plus the length of his automobile, or a total of approximately 40 feet, while defendant's automobile traveled a distance of approximately 150 feet. At 25 miles per hour it would require approximately 4 seconds for the defendant to travel 150 feet. At an average of 5 miles per hour, the plaintiff would cover a distance of approximately 29 feet in 4 seconds. This would cause his car to be in the path of defendant's automobile at the place where the said collision occurred.

The case is clearly ruled by numerous decisions in this Commonwealth that a motorist may not take one look at the edge of a highway and then proceed blindly

across without again looking, when he knows another automobile is approaching the intersection at such a speed and within such a distance as to make his passage questionable.[1]

The controlling rule of law is not relaxed where the intersecting street is a one-way street. The operator's obligation to continue looking is really increased because traffic approaching the intersection on a one-way street may be doing so in any lane of travel.

Judgment is reversed and here entered for the defendant.

_____

DISSENTING OPINION BY WOODSIDE, J.:

I dissent.

When the plaintiff entered the intersection, the defendant was 150 feet away. Having entered the intersection first, the plaintiff had the right of way, and had the right to assume that the defendant would give it to him. Once having committed himself to the crossing of a 25 foot one-way street by accelerating his speed, there was nothing for him to do but continue across. He had already looked twice, once at the house line, 10 or 12 feet from the curb line, and a second time at the curb line. There he committed himself to crossing the intersection. His failure to look a third time *after* he drove further into the intersection could not have contributed to the collision.

Calculations such as those used in the majority opinion are usually not only worthless but dangerously

[1] *Bender v. Curran*, 336 Pa. 527, 10 A. 2d 4; *Heimburger v. Gundy*, 348 Pa. 114, 34 A. 2d 489; *Woerner v. Heim*, 124 Pa. Superior Ct. 246, 188 A. 391; *Coventry v. Keith*, 175 Pa. Superior Ct. 501, 106 A. 2d 658; *Merkel v. Janiszewski*, 180 Pa. Superior Ct. 71, 117 A. 2d 795.

misleading. They assume the complete accuracy of *estimates* of speed and distance. In the majority opinion here, the calculations also assume, without substantiating evidence, that the *average* speed of the plaintiff in crossing the street was 5 miles per hour;[1] that he looked at the instant when his front bumper and not he, himself, was at the curb line; and that the speed of the defendant's car was 25 miles per hour, whereas the testimony was "20 to 25 miles per hour."

But even assuming the accuracy of the assumptions and the estimates, the majority's calculations establish that the proximate cause of the collision was solely the defendant's negligence, and not the failure of the plaintiff to take the third look. The calculations show that the front of the plaintiff's car entered the intersection in full view of the defendant, crossed the street completely and went more than four feet beyond the intersection while the defendant, traveling 150 feet without reducing his speed even one mile an hour, and ignoring over half of the one-way highway open to him, ran into the rear part of the plaintiff's car which had not yet cleared the intersection. If in traveling the 150 feet, the defendant had reduced his speed even slightly or turned even slightly to his left he could have easily avoided the collision.

I would affirm.

Judge WATKINS joins in this dissent.

---

[1] The evidence shows that the plaintiff increased his speed from 2 or 3 to 10 miles per hour. Should we "assume" an average of 5 miles per hour or 6½ miles per hour, remembering that all inferences should be drawn favorably to the plaintiff? 6½ miles per hour (the average of 3 to 10) would put the plaintiff across the intersection.